Giuli IVANISHVILI, Petitioner,

v.

UNITED STATES DEPARTMENT OF JUSTICE & Attorney General Gonzales *, Respondent.

Docket No. 03–4166.

United States Court of Appeals, Second Circuit.

Argued May 16, 2005.

Decided Jan. 5, 2006.

---

* Attorney General Alberto R. Gonzales is substituted for former Attorney General John Ashcroft as Respondent. *See* Fed. R.App. P. 43(c)(2).

334

Bruno Joseph Bembi, Hempstead, New York, for Petitioner.

Mark E. Salter, Assistant United States Attorney, Sioux Falls, South Dakota (Michelle G. Tapken, Acting United States Attorney, District of South Dakota, Sioux Falls, South Dakota, of counsel), for Respondent.

Before: CARDAMONE and KATZMANN, Circuit Judges, and KRAVITZ **, District Judge.

** Hon. Mark R. Kravitz, United States District Court for the District of Connecticut, sitting by designation.

CARDAMONE, Circuit Judge.

Giuli Ivanishvili (Ivanishvili or petitioner) petitions for review of a decision of the Board of Immigration Appeals (BIA or Board) that summarily affirmed an immigration judge's (IJ's) decision rejecting her application for asylum as untimely and denying her application for statutory withholding of removal and her request for withholding under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, G.A. Res. 39/46, U.N. Doc. A/39/51 (1984) (CAT or Convention). She alleges she was persecuted in her country of origin because she is a member of an ethnic and religious minority group and asserts that, if returned, she will face further persecution and possibly torture. We believe the facts of petitioner's case merit more careful attention by the immigration court than has been afforded thus far, and we therefore remand for reconsideration.

## BACKGROUND

Petitioner is a 54–year–old woman from the Republic of Georgia. Although her mother is Georgian, petitioner's father was originally from South Ossetia, a region along the border of Georgia and Russia, and petitioner considers herself ethnically Ossetian. Following Georgia's independence from the Soviet Union in 1991, South Ossetia attempted to secede from Georgia, which led to a civil war and the eventual occupation of South Ossetia by a regional peacekeeping force in 1992. As a result of the danger to Ossetians in Georgia during this period, petitioner changed her name to Ivanishvili (her mother's maiden name) from Gagloshvili (her father's name) to avoid identification as an

Ossetian. Petitioner became a Jehovah's Witness in 1994.

Ivanishvili entered the United States on December 3, 1996 on a valid non-immigrant visa that permitted her to remain lawfully in the United States until June 2, 1997. She overstayed this visa. In January 1998, she allegedly paid $2,000 to an individual named Alexey Alabushev to file an application for asylum on her behalf. According to Ivanishvili, Alabushev did not file the application and disappeared without providing her with any receipts or correspondence. In September 1998, Ivanishvili allegedly paid another $2,000 to one Tony Lan to file an asylum application on her behalf. Lan provided petitioner with unsigned receipts, but filed a fraudulent application for a student visa instead of an asylum application. Ivanishvili obtained reputable legal counsel in 2000 and filed an application for asylum and withholding of removal on July 18, 2000.

In her application, Ivanishvili asserted that she suffered "severe mistreatment and physical abuse [in Georgia] for being a Jehovah's Witness and Ossetian," and stated that she feared "future harm and torture in the event of my return to Georgia." Specifically, petitioner contended that, due to her ethnicity, she suffered "humiliation, harassment and even beatings" and was denied educational and employment opportunities to which she was entitled. During the civil war in Ossetia, petitioner alleged her family was subjected to violence and intimidation at the hands of Georgian nationalists and soldiers, and that Georgian nationalists vandalized her home by throwing rocks through her windows. She also stated that as late as August 1996, shortly before leaving Georgia for the United States, her neighbors assaulted her and threatened further harm if she did not leave Georgia and move to Ossetia.

Petitioner also alleged severe abuse and mistreatment because of her religion. She reported three separate occasions in 1995 and 1996 when military or police officials accosted her and her fellow worshipers during religious meetings. The officers reportedly beat petitioner, called the worshipers "[d]amn [s]ectarians," and threatened to kill them. Petitioner also alleged that unknown parties vandalized her place of worship in 1996, painting "Death to Sectarians!" on the wall.

The Immigration and Naturalization Service (INS)[1] initiated removal proceedings against petitioner by a Notice to Appear served on August 28, 2000. At her hearing before the IJ, Ivanishvili conceded removability but sought asylum, withholding of removal, and relief under CAT for the reasons stated in her application. In support, Ivanishvili submitted numerous documents to the IJ, including articles from news sources and non-governmental organizations detailing the adverse treatment to which Ossetians and religious minorities have been subjected in Georgia and the U.S. State Department's 2000 Country Report (Country Report) on human rights practices in Georgia.

Ivanishvili's testimony regarding religious persecution was consistent with the statements in her asylum application. Petitioner did not testify in detail about the reported incidents of ethnic persecution, but did relate an incident from September 1992 when armed Georgian soldiers allegedly broke into her apartment, beat her with clubs, and threatened to kill her if she did not leave Georgia and move to Ossetia.

---

1. Pursuant to the Homeland Security Act of 2002, Pub.L. No. 107–296 § 441, 116 Stat. 2135, 2193, on March 1, 2003, the INS was abolished and its functions transferred to the Department of Homeland Security. We refer to the INS throughout this opinion, however, to avoid confusion.

As a result of this incident, Ivanishvili testified that she moved in with her mother and sought out the Jehovah's Witnesses for spiritual guidance.

The IJ issued an oral decision on December 13, 2001 denying petitioner's application for asylum and withholding of removal and her request for relief under CAT and granting her voluntary departure from the United States. The IJ ruled petitioner's asylum application was not timely and that she could not prove extraordinary circumstances justifying her failure to timely file. The IJ further concluded that petitioner's application for statutory withholding of removal was without merit. He questioned Ivanishvili's testimony because it was "relatively general," and because she failed to include the most severe incident of harm based on her ethnicity—the September 1992 attack by Georgian soldiers—in her asylum application. While conceding that the documentary evidence submitted by petitioner, including the State Department's Country Report, demonstrated that "severe problems" exist for Ossetians in Georgia, the IJ nonetheless concluded that "the harassment that has been indicated would not constitute persecution within the meaning of the Immigration and Nationality Act." Finally, the IJ found no evidence that Ivanishvili faced a likelihood of torture if returned to Georgia and denied her CAT claim.

Petitioner appealed to the BIA on January 4, 2002. In support of her appeal, Ivanishvili submitted additional affidavits and news reports substantiating her accounts of abuse, discrimination, and violence against Ossetians and Jehovah's Witnesses in Georgia. She did not address the IJ's adverse decision on her CAT claim. The Board affirmed the IJ's decision without opinion on January 8, 2003, and Ivanishvili petitioned this Court for review.

## DISCUSSION

### I Standard of Review

██ Ordinarily we review BIA decisions, but when the BIA summarily adopts an IJ's decision as the final agency determination, we review the IJ's decision directly. *Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). An IJ's factual determinations are upheld if supported by substantial evidence, *see, e.g., Zhang v. INS*, 386 F.3d 66, 73 (2d Cir.2004), a standard that is "slightly stricter" than the clear-error review we apply to the factual determinations of district courts, but nonetheless one that allows only very narrow grounds for reversal. *Qiu v. Ashcroft*, 329 F.3d 140, 149 (2d Cir.2003); *see Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir.1999) (describing the scope of such review as "exceedingly narrow"). Indeed, we will overturn the IJ's or BIA's factual determinations only if a reasonable factfinder would be compelled to conclude to the contrary. *See Zhang*, 386 F.3d at 73.

██ Despite these limitations, we retain substantial authority to vacate BIA or IJ decisions and remand for reconsideration or rehearing if the immigration court has failed to apply the law correctly or if its findings are not supported by record evidence. *See Qiu*, 329 F.3d at 149. Moreover, it is not our task to search the record for reasons why a decision of the IJ or BIA should be affirmed; rather, the immigration court must adequately link its decision to the record evidence in a reasoned opinion that properly applies the law, *id.*, and "if the IJ's reasoning proves inadequate for denying a petitioner's claim, we will not hesitate to reverse," *Secaida–Rosales*, 331 F.3d at 305.

Ivanishvili asserts on appeal that the IJ erred in rejecting her asylum application as untimely and in denying her requests for statutory withholding of removal and withholding under the CAT. She also contends the IJ erred by not considering the documentary evidence she submitted at her hearing and that the BIA abused its discretion by failing to consider the additional documentary evidence petitioner submitted on appeal.

In our view, the IJ's denial of Ivanishvili's application for withholding of removal is based on reasoning that, in light of the record, is insufficient for us to permit meaningful review of the decision. We therefore vacate the BIA's decision insofar as it summarily affirmed the IJ's denial of petitioner's application for withholding and remand to the BIA with instructions to vacate that portion of the decision and remand it to the IJ for further proceedings consistent with this opinion. In all other respects, we affirm the IJ's decision.

## II Petitioner's Application for Asylum

We turn first to the IJ's rejection of Ivanishvili's asylum application. An alien seeking asylum must apply within one year of her last arrival in the United States or April 1, 1997, whichever is later. *See* 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 208.4(a)(2)(ii). Because Ivanishvili arrived in the United States on December 3, 1996, she was entitled to have the one-year limit run from April 1, 1997 and should have filed her asylum application by April 1, 1998. Petitioner's asylum application was not filed until July 18, 2000, more than two years after the regulatory deadline. The IJ thus rejected the application as untimely.[2] We conclude that petitioner's claim cannot succeed because she has not complied with the procedural requirements for asserting that "extraordinary circumstances" excuse her failure to timely file. Ineffective assistance of counsel is one such extraordinary circumstance, *see* 8 C.F.R. § 208.4(a)(5)(iii), but in order to make such a claim, an alien must: (1) file an affidavit "setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard"; (2) inform counsel of the allegations and allow him an opportunity to respond; and (3) file a complaint against counsel "with appropriate disciplinary authorities," or explain why she has not done so. *Id.*

■ Ivanishvili contends that she paid Alexey Alabushev $2,000 to file an asylum application on her behalf in January 1998, before the regulatory deadline, but Alabushev did not file the application and absconded with her money. Petitioner therefore contends that her failure to timely file was the result of ineffective assistance of counsel. Her supporting affidavit, however, simply states that in January 1998 she went to an office called "Immigration Service" in Brooklyn, New York to seek help with filing an asylum application, that she paid Alabushev $2,000, and that she discovered in April or May 1998 that

**2.** The government contends on appeal that 8 U.S.C. § 1158(a)(3) strips this Court of jurisdiction to review that determination. We need not address the jurisdictional issue. Our assumption of jurisdiction to consider first the merits is not barred where the jurisdictional constraints are imposed by statute, not the Constitution, and where the jurisdictional issues are complex and the substance of the claim is, as here, plainly without merit. *See Marquez–Almanzar v. INS,* 418 F.3d 210, 216 n. 7 (2d Cir.2005). Consideration of the merits is especially appropriate because neither party has addressed the complex question of whether the recent amendments to 8 U.S.C. § 1252 by the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, impacts our jurisdiction in this case.

the office was closed and no application had been filed. The affidavit does not contain details about petitioner's arrangement with Alabushev, including what services he promised, when he intended to file the application, or what evidence petitioner provided to Alabushev in support of the application.

Moreover, in her testimony and supporting affidavit, Ivanishvili offered no evidence that she attempted to determine Alabushev's whereabouts after he disappeared or attempted to inform him of her ineffective assistance claim. She also did not file a complaint with any disciplinary authority and her proffered reason for not doing so—that she "was illegal here and . . . was afraid of doing any move [sic]"—if accepted, would effectively excuse all illegal aliens from the complaint requirement. Petitioner did not satisfy the prerequisites for bringing an ineffective assistance of counsel claim and therefore could not demonstrate "extraordinary circumstances" excusing her failure to timely file.

### III Petitioner's Application for Withholding of Removal

■ When an applicant is ineligible to apply for asylum due to the time restrictions set forth in 8 U.S.C. § 1158(a)(2)(B), the "asylum application [is] construed as an application for withholding of removal." 8 C.F.R. § 208.3(b). To qualify for withholding, the applicant must establish that her "life or freedom would be threatened in [the] country [of removal]" on the basis of one of five statutory grounds, "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see* 8 C.F.R. § 208.16(b); *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004). If the applicant establishes that she "suffered past persecution" on the basis of one such statutory ground, eligibility for withhold-

ing is presumed, subject to rebuttal. 8 C.F.R. § 208.16(b)(1); *see Secaida–Rosales,* 331 F.3d at 306. The applicant alternatively may qualify for withholding if she can show "that it is more likely than. not" that she "would be persecuted" on the basis of a statutory ground. 8 C.F.R. § 208.16(b)(2); *see Melgar,* 191 F.3d at 311 (stating that withholding of removal requires a "clear probability that [the applicant] will suffer persecution if returned to [the country of removal], i.e., that it is more likely than not that [she] would be subject to persecution"). It is worth noting as well that the concept of persecution inheres in the analysis of both asylum and withholding of removal, but it is the burden of proving persecution that differentiates the two, with the latter demanding the more exacting standard. *See Zhang,* 386 F.3d at 71 (noting "the two forms of relief are factually related but with a heavier burden for withholding"); *see also INS v. Stevic,* 467 U.S. 407, 413, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) (establishing a "clear probability" standard for withholding of removal claims); *INS v. Cardoza–Fonseca,* 480 U.S. 421, 441, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (distinguishing between "the broad class of refugees" subject to discretionary asylum relief and the "subcategory" of that class "entitled to [withholding of removal] relief").

While the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, has amended both the withholding of removal and asylum statutes explicitly by addressing burden of proof and credibility determinations in their respective contexts, *see id.* § 101(a), (c) (codified at 8 U.S.C. §§ 1158(b)(1)(B), 1231(b)(3)(C)), these amendments do not affect petitioner's application, which was filed before their effective date, *see id.* § 101(h).

Petitioner alleged in the case before us two statutory grounds for withholding of

removal, ethnic persecution and religious persecution. Her primary evidentiary support for ethnic persecution was her testimony regarding past persecution at the hands of Georgian nationalists and government officials and documentary materials about human rights practices in Georgia. Her primary evidentiary support for religious persecution similarly consisted of her own testimony and background documentary materials showing persecution of Jehovah's Witnesses in Georgia. Finding her evidentiary support unpersuasive, the immigration court rejected both of her claims.

With respect to ethnic persecution, the IJ found that her testimonial evidence and her application were relatively general, meaning that in his view they failed to give sufficient detail about the alleged acts of ethnic persecution. The IJ also questioned petitioner's credibility because her application failed to mention the most severe incident of ethnic persecution, the September 1992 abuse by military officials. Finally, the IJ found that although the documentary materials proved "that there was, in fact, a war between Georgia and Ossetia" and that "[t]here were severe problems" between the two ethnic groups, nonetheless, "members of her ethnic group were able to return to Georgia." With regard to religious persecution, relying on the U.S. State Department's Country Report and "other background evidence," the IJ held that although the documentary materials "establish[ed] that there are problems with harassment of Jehovah's Witnesses in Georgia, ... the harassment that has been indicated would not constitute persecution within the meaning of the Immigration and Nationality Act." The IJ then denied, without further discussion, petitioner's claims under the withholding of removal statute.

▉▉▉ The IJ's discussion of the important claims raised by petitioner does not permit adequate review by this Court and therefore requires a remand for further consideration. As noted above, we will vacate the BIA's or IJ's "conclusions[ ] as to the existence or likelihood of persecution ... insofar as the BIA either has not applied the law correctly, or has not supported its findings with record evidence." *Qiu*, 329 F.3d at 149. This means that errors found pursuant to our *de novo* review of the IJ's application of law are not necessarily excused because the IJ's decision might have been reasonable if the error had not been made. It also means that our deferential review of the IJ's factual findings does not require us to seek alternative grounds for affirmance where the grounds set forth by the IJ are insufficient. *Id.* In this case, the IJ failed both to support its findings with adequate record evidence and to apply correctly the relevant law.

As to the IJ's application of law, its opinion failed to distinguish adequately between "harassment" and "persecution," that is, what "constitute[s] persecution within the meaning of the Immigration and Nationality Act." While the confusion is somewhat understandable, since the courts of appeals have not settled on a single, uniform definition of persecution in this context, *see Aguilar–Solis v. INS*, 168 F.3d 565, 569 (1st Cir.1999) (noting the courts' failure to achieve a general consensus on the definition of persecution), a clear understanding of the meaning of persecution—a term not defined by the Immigration and Nationality Act—is essential to the analysis of withholding of removal.

▉▉▉▉ The circuits that have encountered this issue have variously described the meaning of persecution. *See, e.g., Karouni v. Gonzales*, 399 F.3d 1163, 1171 (9th Cir.2005) (defining persecution as "the in-

fliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive"); *Chaib v. Ashcroft,* 397 F.3d 1273, 1277 (10th Cir.2005) (same); *Abdel–Masieh v. INS,* 73 F.3d 579, 583–84 (5th Cir.1996) (*quoting Matter of Laipenieks,* 18 I. & N. Dec. 433, 457 (BIA 1983)) (same); *Rife v. Ashcroft,* 374 F.3d 606, 612 (8th Cir.2004) (defining persecution as the "infliction or threat of death, torture, or injury to one's person or freedom on account of a statutory ground"); *Bace v. Ashcroft,* 352 F.3d 1133, 1137 (7th Cir.2003) (defining persecution as "punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate"); *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"). We have explained that persecution "includes 'more than threats to life and freedom,'" *Chen v. INS,* 359 F.3d 121, 128 (2d Cir.2004) (*quoting Begzatowski v. INS,* 278 F.3d 665, 669 (7th Cir.2002)), and therefore encompasses a variety of forms of adverse treatment, including "non-life[-]threatening violence and physical abuse," *Chen,* 359 F.3d at 128, or nonphysical forms of harm such as "the deliberate imposition of a substantial economic disadvantage," *Guan Shan Liao v. U.S. Dep't of Justice,* 293 F.3d 61, 67 (2d Cir. 2002). In short, persecution is the infliction of suffering or harm upon those who differ on the basis of a protected statutory ground (a standard the parties do not here dispute, *see, e.g., In re S–A–,* 22 I. & N. Dec. 1328, 1336 (BIA 2000) (defining persecution as "the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive"); Respondent's Brief at 15 (same)).

■ Of course, as the IJ noted in its decision, persecution does not encompass mere harassment. *Chen,* 359 F.3d at 128. To "harass" is "to vex, trouble, or annoy continually or chronically," *Webster's 3d New Int'l Dictionary* 1031 (1981), and "harassment" is "[w]ords, conduct, or action (usu[ally] repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose." *Black's Law Dictionary* 721 (7th ed.1999). And if the immigration court, having correctly applied the definition of persecution to the facts of this case, had determined on the basis of the whole record that petitioner's mistreatment indeed constituted harassment, we would have no quarrel with the decision; for we recognize that the difference between harassment and persecution is necessarily one of degree that must be decided on a case-by-case basis. But this the immigration court did not do. Instead, in rejecting petitioner's religious persecution claim, the IJ relied on the Country Report and "other background evidence" to find that the "problems with harassment of Jehovah's Witnesses in Georgia" did not amount to persecution. Yet in reaching this finding, the immigration court did not even mention the substantial testimony regarding petitioner's alleged religious persecution, nor did it explicitly find such testimony incredible.

■ While we do not require the IJ to make individualized credibility findings for each allegation, *cf. Qiu,* 329 F.3d at 149 (noting that "fail[ure] to consider all factual assertions in an applicant's claim for eligibility" may be excused "only where the evidence in support of a factor potentially giving rise to eligibility is too insignificant to merit discussion"), in the face of the substantial testimony and corroborating documentation petitioner submitted to

the IJ regarding her religious persecution, we find it remarkable, not to mention frustrative of judicial review, that the IJ did not in any way analyze or weigh that testimony. *See Chen*, 359 F.3d at 127 ("What is troubling about this case is the undisputed failure by the IJ and the BIA ... to acknowledge, much less evaluate, Chen's testimony that he had been beaten" on the basis of his religion). Assuming everything petitioner said is true, it is not at all clear that the treatment she suffered was harassment rather than persecution.

 The government contends these incidents cannot give rise to persecution because the officers may have acted out of their own religious fervor, and not at the direction of the Georgian government. We note, however, that even assuming the perpetrators of these assaults were not acting on orders from the Georgian government, it is well established that private acts may be persecution if the government has proved unwilling to control such actions. *See, e.g., Karouni*, 399 F.3d at 1171; *Bace*, 352 F.3d at 1138.

Ivanishvili testified that on three separate occasions in 1995 and 1996, military or police officers violently attacked her and her fellow worshipers during religious meetings, calling the worshipers "damn sectarians" and threatening to kill them. Petitioner also alleged that unknown parties vandalized her place of worship in 1996, painting "Death to Sectarians!" on the wall. The documentary evidence supports these allegations. The U.S. State Department's Country Report, for example, states that religious minorities—particularly Jehovah's Witnesses—have repeatedly been subjected to assaults and beatings by government agents and private parties acting with impunity because "police and prosecutors [have] refused to prosecute persons who attacked members of Jehovah's Witnesses."

 Where an alien, because of her membership in a statutorily protected class, suffers physical abuse and violence at the hands of government agents or private actors who behave with impunity in the face of government reluctance to intervene, such evidence is relevant to the alien's claim that she has been subjected to persecution or has a well-founded fear of persecution. *Chen*, 359 F.3d at 128. That evidence, if credible, may preclude a finding that the conduct is mere harassment that does not as a matter of law rise to the level of persecution, for violent conduct generally goes beyond the mere annoyance and distress that characterize harassment. The IJ in this case did not evaluate, or even meaningfully acknowledge, petitioner's testimony that she had been beaten, and we must therefore give the IJ opportunity to do so. *See id.* at 127 (vacating and remanding the BIA's decision affirming the IJ's denial of application for asylum and withholding of removal due to the failure to acknowledge testimonial evidence). After reconsidering whether the alleged treatment suffered by petitioner constitutes persecution, the IJ will also have the opportunity to consider whether petitioner has satisfied the standard of proof relevant to withholding applications, *i.e.*, a "clear probability" that petitioner will suffer persecution in the proposed country of removal. *See Melgar*, 191 F.3d at 311. The immigration court did not reach this question because it concluded that Ivanishvili had not been persecuted and therefore did not qualify for withholding.

 In sum, because we find that the IJ "ignor[ed] a significant aspect of [petitioner's] testimony in support of h[er] claims of past persecution and future persecution," *Chen*, 359 F.3d at 128, the BIA's decision, insofar as it summarily affirmed the IJ's denial of petitioner's application

for withholding of removal, must be vacated and the case remanded to the BIA for further proceedings consistent with this opinion. On remand, the IJ is instructed to apply the definition of persecution set forth in this opinion and take full account of the allegations of physical violence contained in petitioner's testimony and the supporting documentary evidence, particularly with regard to her claim of religious persecution. If the IJ concludes that, applying these standards, Ivanishvili's testimony constitutes persecution, the IJ must then consider whether petitioner's evidence demonstrates a threat to life and freedom sufficient to qualify for withholding of removal, *i.e.*, whether there is a clear probability of such persecution. If the IJ concludes that persecution was not proved because petitioner's testimony was not credible, the IJ's analysis should include "specific, cogent reasons" for rejecting petitioner's testimony, reasons which "bear a legitimate nexus" to the adverse credibility finding. *Secaida–Rosales*, 331 F.3d at 307.

## IV Petitioner's Claim for Withholding of Removal Under the Convention Against Torture

Ivanishvili next argues that the BIA erred in not considering her CAT claim, even though she did not raise the IJ's rejection of that claim in her appeal. The government, seizing on that failure, contends she has not exhausted her administrative remedies as required by 8 U.S.C. § 1252(d)(1) and therefore the issue is not properly before us.

Section 1252(d)(1) provides, in pertinent part, that federal courts may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." Statutory exhaustion requirements are mandatory, and so, unlike with common

law exhaustion requirements, the "judicial discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in district court despite his abandonment of the administrative review process" does not apply in this context. *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir.1998); *see Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir.2003). While we have recently noted potential exceptions to our statutory exhaustion doctrine, petitioner's CAT claim does not come close to falling within their reach. *See Gill v. INS*, 420 F.3d 82, 86–87 (2d Cir.2005) (considering certain subsidiary arguments purely legal in nature despite failure to raise arguments before the BIA); *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 52–53 (2d Cir. 2004) (considering alien's habeas petition despite failure to exhaust administrative remedies under 8 U.S.C. § 1252(d)(1) in order to avoid "manifest injustice"). Petitioner's failure to raise her CAT claim before the BIA is inexcusable and, in any event, the claim is meritless. While her allegations of adverse treatment may rise to the level of persecution, none rises to the level of torture. *See* 8 C.F.R. § 208.18(a)(1) (defining torture as an "act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person ... by or at the instigation of or with the consent or acquiescence of a public official" for specified purposes such as punishment, intimidation, discrimination, or obtaining information).

## V Other Issues

Ivanishvili finally contends that the IJ failed to consider the documentary evidence she submitted and that the BIA similarly abused its discretion in failing to consider the additional documentary evidence she appended to her appeal. We find these claims to be wholly without merit. The record provides no basis for peti-

**344**

tioner's first contention; indeed, the IJ's oral decision acknowledged that Ivanishvili submitted documentary evidence that substantiated her testimony. · There is also no authority supporting petitioner's contention that an IJ errs unless he specifically discusses, evaluates, and accepts or rejects each piece of documentary evidence submitted. *See Guan Shan Liao,* 293 F.3d at 68.

■ As for petitioner's second contention, when Ivanishvili filed her appeal with the BIA, she submitted several news reports and articles from NGOs that were not included in the record before the IJ. She contends that she made a motion to have these articles considered which was unopposed by the government, and that the BIA abused its discretion in failing to consider the documents. Petitioner's argument fails, however, because no such motion was filed before the BIA. Rather, Ivanishvili simply appealed the IJ's decision and attached the documents to her appeal. Ivanishvili cites no authority for the proposition that the BIA is required to consider new evidence in the absence of a motion to reopen, and petitioner's appeal on this ground is without merit.

### CONCLUSION

We have considered petitioner's remaining arguments and find them all to be without merit. For the forgoing reasons, the petition for review is granted. We vacate the BIA's summary affirmance of the IJ's denial of petitioner's application for withholding of removal and remand to the BIA with instructions to vacate that portion of the IJ's decision and remand to the IJ for further proceedings consistent with this opinion. In all other respects, the IJ's decision is affirmed.