Tatiana NOZADZE, Petitioner,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, by its District Director of the New York District, and Alberto R. Gonzales, Attorney General of the United States of America, Respondents.

No. 05–2336–ag.

United States Court of Appeals, Second Circuit.

May 22, 2006.

Nicholas J. Mundy, Kuba, Mundy & Associates, New York, New York, for Petitioner.

Lawrence J. Laurenzi, Acting United States Attorney for the Western District of Tennessee, Linda Nettles Harris, Assistant United States Attorney, Memphis, Tennessee, for Respondent.

Present: Hon. AMALYA L. KEARSE, Hon. CHESTER J. STRAUB, and Hon. ROBERT A. KATZMANN, Circuit Judges.

### SUMMARY ORDER

■ Petitioner Tatiana Nozadze (A 70–887–464), a native and citizen of Georgia, petitions for review of the April 21, 2005 BIA decision affirming Immigration Judge ("IJ") Adam Opaciuch's decision denying her claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the underlying facts and procedural history.

Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision directly as the final agency determination. *See, e.g., Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005). We review an IJ's factual findings under the substantial evidence standard, and therefore "a finding will stand if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (internal quotation marks omitted). Alternatively, "where the agency's determination is based on an inaccurate perception of the record, omitting potentially significant facts, we may remand for reconsideration or rehearing, or, if circumstances warrant it, a new hearing." *See, e.g., Tian–Yong Chen v. INS,* 359 F.3d 121, 127 (2d Cir.2004) (internal citations omitted). We review the IJ's applications of law to undisputed facts *de novo. See, e.g., Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004).

In order to establish eligibility for asylum, an applicant must show that she has suffered past persecution, or has a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1101(a)(42). We have described "persecution" as "the infliction of suffering or harm upon those who differ on the basis of a protected statutory ground." *Ivanishvili v. U.S. Dep't of Justice,* 433 F.3d 332, 341 (2d Cir.2006). We have explained that "persecution does not encompass mere harassment," *id.,* but have also made clear that persecution includes "more than threats to life or freedom" and that "non-life-threatening violence and physical abuse also fall within this category," *Tian–Yong Chen,* 359 F.3d at 128 (internal quotation marks omitted).

At her hearing before the IJ, Nozadze testified about numerous instances of violence and violent threats that she suffered due to her Judaism and non-Georgian nationality. Among other things, she stated that the Special Forces—who were seeking to remove non-Georgians from their residences—had shown up at her apartment with guns. She explained that she hid from them, and that when her neighbor went over to see what was happening, the Special Forces informed her neighbor that they would kill Nozadze if she was still living in the apartment when they returned. Nozadze further testified that the Special Forces subsequently returned and tried to shoot in her apartment door. At this point, she claimed, she fled her

apartment and went to live with her mother and stepfather, after which time her stepfather was stabbed to death on his way home from synagogue. She testified that her family went to the police, who said that "the same thing would happen to us if we would not leave," after which time she left Georgia and came to the United States.

In his oral decision, the IJ assumed that Nozadze had testified credibly, but went on to conclude that, as a matter of law, the events to which she had testified did not rise to the level of past persecution. In describing and analyzing Nozadze's testimony, however, the IJ ignored significant aspects of it. For example, the IJ characterized Nozadze as having testified that her neighbor told her only that the Special Forces "wanted to drive [her] out of [her] apartment in order to give it to someone of Georgian origin." He omitted Nozadze's statement that her neighbor also told her that the Special Forces had said that "if I'm going to be still there when they come next time, they are going to kill me." Similarly, with regard to her stepfather's death, the IJ stated only that "she also indicated that her stepfather was knifed and eventually bled to death," without mentioning Nozadze's testimony that her stepfather had been killed "while returning from the synagogue." Additionally, the IJ stated that after her stepfather's murder, "a complaint was made to the police, but the police refused to follow up on the complaint," utterly leaving out Nozadze's statement that the police "refused to take our complaint because they told us that the same thing would happen to you if you would not leave. And first they said that they will do everything, but then they said that the same thing would happen to us if we would not leave."

As noted above, when the BIA's "determination is based on an inaccurate perception of the record, omitting potentially significant facts, we may remand for reconsideration." *See Tian–Yong Chen*, 359 F.3d at 127. Indeed, in *Tian–Yong Chen*, we remanded for reconsideration where the IJ and BIA, in ruling that the past events suffered by an asylum applicant did not amount to persecution, had failed to consider the applicant's testimony that he had been beaten due to his Roman Catholic faith. *See id.* at 127–129. Similarly, because here the IJ (as summarily affirmed by the BIA) failed to consider significant aspects of Nozadze's testimony, such as the threats on her life, we believe that reconsideration on her asylum claim is warranted.

■ In addition to finding that Nozadze had not established past persecution, the IJ also found that she had not established a well-founded fear of future persecution, due to changed country conditions in Georgia, as set forth in the most recent State Department Report. Of course, changed country conditions can render even someone who suffered from past persecution ineligible for asylum. But that does not obviate the need for a remand here. As we have repeatedly explained, "a showing of past persecution sets up a rebuttable presumption of a well-founded fear of future persecution, which is overcome only if a preponderance of the evidence establishes that a change in circumstances in the applicant's country of nationality has occurred such that the applicant's fear is no longer well-founded." *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 148 (2d Cir.2003) (internal quotation marks omitted). Thus, had Nozadze met her burden of showing past persecution, the burden of disproving future persecution would have shifted to the government, under a "preponderance of the evidence" standard. See 8 C.F.R. § 208.13(b)(1)(ii). Because the IJ found that Nozadze had not established past persecution, however,

he placed the burden on her to establish a well-founded fear of persecution. Thus, the IJ's error in evaluating Nozadze's past persecution claim influenced his assessment of her future persecution claim, and this issue must therefore be revisited upon remand. Indeed, even if the previously-overlooked details summarized above do not alter the IJ's finding on remand as to past persecution, they might well affect his assessment of the risks of future persecution because they suggest a greater level of violence on the part of the Special Forces and more calculated violence toward Jews.

Nozadze's claim for withholding of removal—which requires a showing that her "life or freedom would be threatened in [Georgia] because of [her] ... religion," 8 U.S.C. § 1231(b)(3)(A)—must be remanded for the same reason that her asylum claim requires remand: namely, the IJ's failure to consider evidence relevant to this claim. Nozadze's CAT claim, however, must be rejected because she failed to raise that claim in her petition for review, and therefore waived it. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 541 n. 1. (2d Cir.2005).

Accordingly, Nozadze's petition for review is **GRANTED**, the BIA's order is **VACATED**, and the case is **REMANDED** to the BIA for further proceedings consistent with this opinion.