**Ioan M. GHILDUTA, Gyongyi Maria Ghilduta, Robert Ghilduta, Petitioners,**

v.

**Michael B. MUKASEY, United States Attorney General,[1] Respondent.**

**No. 07–1008–ag.**

United States Court of Appeals, Second Circuit.

Feb. 6, 2008.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

---

H. Raymond Fasano, Madeo & Fasano, New York, NY, for petitioners.

Peter D. Keisler, Assistant Attorney General, Civil Division, Lisa M. Arnold, Senior Litigation Counsel, Joshua E. Braunstein, Senior Litigation Counsel, Heather S. Navarro, Of Counsel, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for respondent.

PRESENT: Hon. ROSEMARY S. POOLER, and Hon. ROBERT D. SACK, Circuit Judges.[2]

### SUMMARY ORDER

Gyongyi Maria Ghilduta, Ioan M. Ghilduta, and Robert Ghilduta, natives and citizens of Romania, seek review of a February 23, 2007, order of the BIA affirming the February 14, 2005, decision of Immigration Judge ("IJ") Jeffrey S. Chase denying their applications for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). *In Re Ioan M./Gyongyi Maria/Robert Ghilduta,* Nos. 70 866 744/A 75 996 713/996 714 (B.I.A. Feb. 23, 2007), *aff'g* Nos. A 75 996 713/70 866 744/75 996 714 (Immig. Ct. New York City Feb. 14, 2005). We assume the parties' familiarity with the underlying facts and procedural history of the case.

As an initial matter, we decline to review the Ghildutas' contention that remand is warranted because the Government and the IJ failed to forward Maria's asylum application to the Department of State, pursuant to 8 C.F.R. § 1208.11(a). The Ghildutas failed to raise that argument in their brief to the BIA. We therefore decline to consider it. *Lin Zhong v. U.S. Dep't. of Justice,* 480 F.3d 104, 107 n. 1 (2d Cir.2007)("If the government points out to the appeals court that an issue relied on before that court by a petitioner was not properly raised below, the court must decline to consider that issue.").

When the BIA does not expressly "adopt" the IJ's decision, but "its brief opinion closely tracks the IJ's reasoning," we may consider both the IJ's and the BIA's opinions for the sake of completeness if doing so does not affect this Court's

ultimate conclusion. *Wangchuck v. D.H.S.*, 448 F.3d 524, 528 (2d Cir.2006). We review the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Iouri v. Ashcroft*, 487 F.3d 76, 81 (2d Cir.2007)(quoting section 1252(b)(4)(B)). We review *de novo* questions of law, including what quantum of evidence will suffice to discharge an applicant's burden of proof. *See, e.g., Secaida–Rosales v. I.N.S.*, 331 F.3d 297, 307 (2d Cir.2003); *Islami v. Gonzales*, 412 F.3d 391, 396 (2d Cir.2005).

We conclude that the agency properly determined that "the harm to the respondent constitutes discrimination and harassment, but not persecution." We have decided that persecution may include non-life-threatening violence and physical abuse, but "persecution does not encompass mere harassment." *Ivanishvili v. U.S. Dep't. of Justice*, 433 F.3d 332, 341 (2d Cir.2006). Here, the treatment suffered by the primary applicant, Maria Ghilduta, did not rise above "mere harassment." She asserted that she was not chosen to head the company where she worked, but was instead passed over in favor of another, who was male and ethnically Romanian. She also asserts that she was pressured and harassed on a daily basis and therefore quit her job. She also alleges that while she and her son were traveling on a train, they were angrily confronted by an ethnic Romanian who cursed at them for speaking Hungarian. Additionally, she asserted that her parents' vineyard had been destroyed by ethnic Romanians, and that she constantly endured racial slurs and insults because of her Hungarian ethnicity. However, as the BIA found, Maria and her family "were not detained or physically harmed, or threatened with detention or physical harm, by the government, or by persons the government was unwilling or unable to control, on account of their Hungarian ethnicity." Moreover, the BIA properly found that Maria and her family were not "prevented from obtaining gainful employment or subjected to other severe economic restrictions." *Cf. In re T–Z–*, 24 I. & N. Dec. 163, 173–74 (BIA 2007) (finding that nonphysical forms of harm, such as the deliberate imposition of a severe economic disadvantage may amount to persecution). Contrary to the petitioners' argument, the BIA properly assessed the harms that they suffered "in the aggregate," and concluded that they did not rise to the level of persecution.

Because Maria was unable to show the objective likelihood of persecution needed to make out an asylum claim, she was necessarily unable to meet the higher standard required to succeed on a claim for withholding of removal, where both claims were based on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156 (2d Cir.2006).

For the foregoing reasons, the petition for review is DENIED. Having completed our review, the pending motion for a stay of removal in this petition is DISMISSED as moot.