Garcia-Ramirez v. Holder

BIA
Videla, IJ
A088 016 618/619

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5th day of April, two thousand eleven.

PRESENT:
> ROSEMARY S. POOLER,
> ROBERT D. SACK,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges.*

_____

ELIZABETH ZUMARI GARCIA-RAMIREZ,
KATHERINE XIOMARA GRANADOS GARCIA
> *Petitioners,*

> v.

ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

10-30-ag
NAC

| | |
|---|---|
| FOR PETITIONERS: | Bruno Joseph Bembi, Hempstead, New York. |
| FOR RESPONDENT: | Tony West, Assistant Attorney General; Daniel E. Goldman, Senior Litigation Counsel; Paul T. |

**Cygnarowicz, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.**

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED, that the petition for review is DENIED.

Elizabeth Zumari Garcia-Ramirez ("Garcia") and her daughter Katherine Xiomara Granados Garcia, natives and citizens of El Salvador, seek review of a December 8, 2009, order of the BIA affirming the August 18, 2008, decision of Immigration Judge ("IJ") Gabriel C. Videla, which denied their application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Garcia-Ramirez*, Nos. A088 016 618/619 (B.I.A. Dec. 8, 2009), *aff'g* Nos. A088 016 618/619 (Immig. Ct. N.Y. City Aug. 18, 2008). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we review the decision of the IJ as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). The applicable standards of review are well-established. *See Salimatou Bah v. Mukasey*, 529 F.3d 99, 110-11 (2d Cir.

2008); *Shu Wen Sun v. BIA*, 510 F.3d 377, 379 (2d Cir. 2007). The only issue before us is whether the agency erred in denying Garcia's application for asylum and withholding, as Garcia has not challenged her denial of CAT relief in this Court.

Garcia challenges the agency's determination that she failed to show that the harm she suffered constituted persecution. The BIA has defined persecution as a "threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (B.I.A. 1985), *overruled in part on other grounds*, *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *accord Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 342 (2d Cir. 2006). The harm or suffering must be inflicted in order to punish the individual for possessing a belief or characteristic the persecutor seeks to overcome, and inflicted either by the government of a country or by persons or an organization that the government is unable or unwilling to control. *Acosta*, 19 I. & N. Dec. at 222; *see also Pavlova v. INS*, 441 F.3d 82, 91 (2d Cir. 2006). In addition, the harm must be sufficiently severe, rising above "mere harassment." *Ivanishvili*, 433 F.3d at 341.

3

Here, the agency reasonably found that the threats against Garcia were insufficiently severe to constitute persecution. *See id*. As the agency noted, Garcia claimed only that her sister's mother-in-law held her responsible for Frederico Zelada's death, and that she received three vague telephone calls. Garcia had one conversation at Zelada's funeral with her sister's mother-in-law, in which the mother-in-law said that Garcia must be happy about what happened to Zelada, and thereafter, Garcia heard from her sister that the mother-in-law was looking for her address. Garcia also received three telephone calls at her home in which someone asked for her by name, and asked whether she lived there. These incidents were the sum total of the threats against Garcia, and the agency did not err in finding that these threats did not amount to persecution. *See id*.

Even if Garcia had suffered persecution, as the agency found, there is no evidence that it was on account of a statutorily protected ground. *See* 8 U.S.C. § 1101(a)(42). In addition to showing past persecution or a well-founded fear of persecution, asylum eligibility requires that the persecution be on account of the applicant's race, religion, nationality, political opinion, or particular social group.

4

*Id.* In order to establish eligibility for asylum based on membership in a particular social group, the applicant must establish both that the group itself was cognizable (i.e., defined with sufficient particularity and socially visible), *see Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007), and that the alleged persecutors targeted the applicant "on account of" her membership in that group, *see* 8 U.S.C. § 1101(a)(42). In this case, Garcia argues that she is a member of a group consisting of "relative[s] of a battered woman accused of the death of the abuser by his relatives." A "particular social group is comprised of individuals who possess some fundamental characteristic in common which serves to distinguish them in the eyes of a persecutor-or in the eyes of the outside world in general." *Ucelo-Gomez*, 509 F.3d at 73 (internal quotation marks omitted). Garcia did not testify that there were other members of her group, nor did she testify as to why her sister's mother-in-law accused her of Zelada's death, although she did testify that his death was likely on account of his debts, and unrelated to his abuse of her sister. Garcia did not testify as to why she believed that the accusation by her sister's mother-in-law was a result of her relationship to her sister, a battered woman. Consequently, she did not meet her burden of showing that her status as the relative of a battered

5

woman distinguished her in the eyes of her sister's mother-in-law. Moreover, "although the existence of persecution is a relevant factor, a social group cannot be defined exclusively by the fact that its members have been subjected to harm." *Ucelo-Gomez*, 509 F.3d at 73 (internal quotation marks and emphasis omitted). In this case, the group Garcia describes is defined exclusively by the harm she suffered – the accusation made by her sister's mother-in-law.

Garcia also argues briefly that she was persecuted on account of her imputed political opinion, because "[i]n the eyes of Ms. Zelada, her belief and opposition to her sister's relationship with her son, was the cause of his death and the main reason for the threats and intimidation that she was carrying out against her." However, as discussed above, Garcia did not meet her burden of demonstrating that her sister's mother-in-law believed Zelada's death was a result of his abuse of Garcia's sister, or a result of Garcia's opposition to that abuse. As a result, substantial evidence supports the agency's finding that Garcia's dispute was personal, and not on account of any statutorily protected ground. *See* 8 U.S.C. § 1101(a)(42).

Because the agency reasonably concluded that Garcia did

6

not suffer past persecution on account of a protected ground, she is not entitled to a presumption of future persecution. *See* 8 C.F.R. § 208.13(b)(1). Furthermore, Garcia makes no argument concerning a fear of future persecution independent from the incidents that occurred in the past. Moreover, after the telephone calls to her home began, Garcia moved to a city approximately two and one-half hours away, where she lived for about seven months without receiving any further threats or telephone calls. As a result, even if Garcia had a well-founded fear of future persecution if she were to return to El Salvador, the record shows that she could avoid persecution by relocating to another part of the country. *See* 8 C.F.R. § 208.13(b)(2)(ii).

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any pending motion for a stay of removal in this petition is DISMISSED as moot.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk

7