SHU LING NI and Zhen Fu
Cheng, Petitioners,

v.

BOARD OF IMMIGRATION
APPEALS, Respondent.

Docket No. 04–3391–AG(L),
04–3389–AG(CON).

United States Court of Appeals,
Second Circuit.

Submitted Oct. 3, 2005.

Decided Feb. 13, 2006.

Gary J. Yerman, New York, NY, for Petitioners.

Kevin V. Ryan, United States Attorney, Matthew A. Lamberti, Assistant United States Attorney, Northern District of California, San Jose, CA, for Respondent.

Before: WALKER, Chief Judge, MESKILL and McLAUGHLIN, Circuit Judges.

PER CURIAM.

This consolidated appeal concerns a recurring issue in 21st century immigration law: China's family planning policy. This case presents a novel variation on this theme because petitioners abandoned their asylum applications and based their sole claim for relief before the Immigration Judge (IJ) from removal on Article III of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), *opened for signature* December 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85; 8 C.F.R. § 208.16 (2005). This case is unlike most cases involving China's family planning policies, where removable aliens seek asylum and, in the alternative, relief under the CAT. *See, e.g., Jin Chen v. Gonzales,* 426 F.3d 104 (2d Cir.2005).

Here, the IJ rejected petitioners' claims for relief from removal under the CAT, a decision that was summarily affirmed by the Board of Immigration Appeals (BIA). In arriving at his decision, the IJ failed to consider whether petitioners could be afforded relief under Article III of the CAT based on their claims that, under China's "one child policy," they would be forcibly sterilized upon their removal.[1] We hold that the IJ's failure to consider these claims constitutes reversible error and we therefore grant the petition and remand for further proceedings.

## BACKGROUND

Petitioners, Zhen Fu Cheng and Shu Ling Ni, husband and wife respectively, are natives and citizens of the People's Republic of China. They were married in 1996 and have two children: Nina, born May 3, 1997, and Jenny, born January 3, 1999. Both petitioners have a long history of perjuring themselves during prior immigration proceedings.

Petitioner Cheng first filed an application for asylum in 1993. In that application, he claimed that his first wife had been forced by the Chinese government to undergo an abortion and that, upon his return to China, he would be persecuted. After the INS found his story incredible, he submitted a "superseding addendum" supporting the credibility of his application. He later admitted that all the information that he had submitted was false, and he withdrew his asylum application with prejudice.

Petitioner Ni also filed an asylum application in 1993. Initially, she stated that she would be persecuted by the Chinese government due to her activities in the Chinese student democratic movement. She later admitted that she had provided false information and she withdrew her asylum application without prejudice. In 1999 she filed another asylum application, dropping the pro-democracy claims and relying instead on persecution due to China's family planning policy. To support this application she claimed that she was forced to undergo an abortion during her seventh month of pregnancy. She also claimed that when she became pregnant for a second time her first husband fled to the United States via boat, but drowned at

---

1. Article III of the Convention Against Torture and Other Cruel, Inhuman or Degrading Punishment, of which the United States is a party, provides that "[n]o State Party shall expel, return (*refouler*) or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." 1465 U.N.T.S. 85, 114. Congress implemented the CAT in 1998 as part of the Foreign Affairs Reform and Restructuring Act of 1998, Div. G. of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub.L. No. 105–277, 112 Stat. 2681, 822–23 (1998) (codified 8 U.S.C. § 1231 note).

sea. Upon learning of her husband's death at sea she was "greatly struck ... and suffered a miscarriage a few days later." She later admitted that this story was false, and she again withdrew her asylum application, this time with prejudice.

■ After the withdrawals of the asylum applications, both petitioners sought relief from removal under the CAT. Their application contained (1) six paragraphs indicating that China's family planning regulations would subject them to involuntary sterilization; and (2) a vague contention that, for reasons unknown, they would be incarcerated upon removal and subjected to mistreatment and torture. The IJ rejected this claim for relief, and the BIA summarily affirmed the IJ's decision. Because the BIA, without giving reasons, summarily affirmed the IJ's decision, we review the IJ's decision rather than the BIA's order. *Zhou Yi Ni v. Gonzales*, 424 F.3d 172, 174 (2d Cir.2005) (Per Curiam).

## DISCUSSION

### A.

■ An applicant for withholding of removal pursuant to the CAT bears the burden of proof to "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).[2] The IJ found that petitioners had not met their burden here, declaring that "[t]here is zero basis for these [CAT] applications." In arriving at this conclusion, however, the IJ explicitly failed to consider the six paragraphs of the CAT application relating to China's family planning policies, despite the requirement that IJs, when "assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, [consider] *all* evidence relevant to the possibility of future torture." 8 C.F.R. § 208.16(c)(3) (emphasis added). During the March 21, 2003 hearing, the IJ stated that "[Paragraphs one through six] ha[ve] nothing to do with Convention against Torture. It seems to be a family planning asylum claim, which there isn't going to be one because they already withdrew their asylum claim a long time ago." Then, when issuing his oral opinion, the IJ explained that "[a]ll that was filed [in the Convention Against Torture application] was a seven very short paragraph affidavit, the first six paragraphs of which have to do with the one child policy, *which does not fall under Article 3 of the U.N. Convention against Torture*, and based upon the fact that they have two kids born in the United States." (emphasis added.) The IJ's failure to consider the question whether petitioners would be subjected to forced sterilization upon their return to China and, if so, whether such conduct falls within the regulatory definition of torture, constitutes reversible error.

While "neither the BIA nor this Court has to date determined whether forced sterilization amounts to torture that persists into the future, such that a victim of forced sterilization automatically qualifies for withholding under the CAT," *Xue*

---

2. Federal regulations define "torture" as follows:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.
>
> 8 C.F.R. § 208.18(a)(1).

*Hong Yang v. Gonzales,* 426 F.3d 520, 522–23 (2d Cir.2005), it was error for the IJ to conclude, without any inquiry into petitioners' individual situation, that Article III of the CAT is inapplicable. Cases in which aliens have applied for relief under Article III on the basis of China's family planning policies (always accompanied by an asylum application) have held that CAT claims based on forced sterilization may be dismissed when the IJ determines either that the petitioners' evidence that they will be forcibly sterilized is not credible, *see id.* at 523, or that the individual petitioners have not submitted sufficient evidence to show that *they personally* have been or would be forcibly sterilized or be subjected to an involuntary abortion. *See Zhou Yi Ni,* 424 F.3d at 175; *Lau May Sui v. Ashcroft,* 395 F.3d 863, 870–72 (8th Cir. 2005); *Yong Hao Chen v. INS,* 195 F.3d 198, 204 (4th Cir.1999) (holding that the petitioners must show that they have been "individually targeted for coercive enforcement of the 'one child' program or that [they] belong[ ] to some subgroup, such as those residing in a particular province or region, against whom coercive enforcement of the 'one child' program remains systematic"). The IJ in this case did neither. Had the IJ considered all the evidence presented by petitioners and declared either that (1) none of the evidence showing that petitioners were more likely than not to be subjected to forced sterilization was credible, or (2) the evidence indicated that their fears were merely speculative, then we would review the decision under the "substantial evidence" standard, *see, e.g., Ramsameachire v. Ashcroft,* 357 F.3d 169, 177 (2d Cir.2004). But, because the IJ made no findings on this issue, his decision cannot stand. *Cf. id.* at 184–86 (vacating and remanding BIA dismissal of a petitioner's CAT claim because both the IJ and the BIA erroneously assumed that "[petitioner's] CAT claim was necessarily precluded because he had failed to carry his burden of proof with respect to his asylum claim").

The Supreme Court has held that "[a] court of appeals is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (citations and internal quotation marks omitted). This situation is not one of the "rare circumstances" enunciated in *Ventura. See Zi Lin Chen v. Ashcroft,* 362 F.3d 611, 622–23 (9th Cir.2004); John W. Guendelsberger, *Judicial Deference to Agency Decisions in Removal Proceedings in Light of INS v. Ventura,* 18 Geo. Immigr. L.J. 605, 635–44 (2004). Moreover, because the IJ did not even consider petitioners' forced sterilization claims he has "failed to perform [his] fact-finding function," thus "this case is not ripe for appellate review." *Palavra v. INS,* 287 F.3d 690, 694 (8th Cir.2002). Following *Ventura,* this case must be remanded to permit the agency to consider, in the first instance, whether petitioners should be afforded relief from removal under the CAT.

## B.

 Petitioners also argue that the IJ should have, *sua sponte,* recused himself from the proceedings because of his transparent animosity towards each of them, which prevented him from rendering an impartial opinion. The Supreme Court, in the context of recusal for federal judges, held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current pro-

ceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *see also Matter of Exame,* 18 I. & N. Dec. 303, 306 (BIA 1982) ("An exception to the general rule that bias must stem from an extrajudicial source may arise where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." (internal quotation marks omitted)). Petitioners do not deny that the IJ's alleged bias arose from his knowledge of their prior proceedings in the immigration courts. Thus, they must meet the substantial burden of proving that the IJ displayed a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky,* 510 U.S. at 555, 114 S.Ct. 1147. Reviewing the record, we conclude that the petitioners have not made this showing.

It is clear that the IJ was frustrated with petitioners' incessant fabrications. There is no indication, however, that a similarly situated IJ, given this unique situation where the applicants simply refused to make truthful statements, would have acted differently. Both the IJ and the BIA recognized that this was an extraordinary situation. The IJ, in his opinion, decried petitioner Ni's abhorrent behavior, stating that "[Ni] piled layer upon layer upon layer of lies and fraud and fraudulent documents to an extent that has never been seen by this Court in my eight years sitting on the bench, which is saying a lot. I have never seen somebody lie so much, so many times and support it with so many phoney documents as I have seen this woman do." The BIA agreed, opining that "[t]his case involve[d] a degree of fraud not frequently encountered." Confronted with petitioners' continual fabrications, we agree with the BIA that there was no basis for recusal and, in fact, we also concur with the BIA's observation that "if it were not for the Immigration Judge's pointed interrogation of [Ni], which was well within his discretion and authority, [Ni's] fraudulent claim might not have been admitted or discovered."

## CONCLUSION

Because the IJ failed to consider whether petitioners' CAT claims based on China's family planning policies have any merit, this case must be remanded so that "[t]he agency can bring its expertise to bear upon the matter." *Ventura,* 537 U.S. at 17, 123 S.Ct. 353. While we find, after reviewing the record, that the IJ was not biased and therefore was under no obligation to recuse himself, we do hold that the ends of justice would be better served if, on remand, this case were assigned to a different IJ; one who has not so forcefully expressed his distaste for the prior conduct of the petitioners. *See, e.g., Fiadjoe v. Att'y Gen. of the United States,* 411 F.3d 135, 163 (3d Cir.2005); *Garrovillas v. INS,* 156 F.3d 1010, 1016 n. 4 (9th Cir.1998).