05-4393-ag
Delgado v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: August 6, 2007                                    Decided: November 28, 2007)

Docket No. 05-4393-ag

_____

MARIA DEL PILAR DELGADO,

*Petitioner*,

− v. −

MICHAEL B. MUKASEY,[1] Attorney General of the United States of America,

*Respondent.*

_____

Before: CALABRESI, RAGGI, and HALL, *Circuit Judges.*

_____

Petition for review of a decision of the Board of Immigration Appeals, affirming an Immigration Judge's denial of Petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture. Petitioner, who fled her country after being kidnapped by anti-government terrorists to set up their computer network, argues, *inter alia*, that the Immigration Judge erred in finding that she failed to establish a well-founded fear of persecution or a likelihood of torture. We hold that the Board of Immigration Appeals improperly denied Petitioner's application without considering whether she had a well-founded fear of future persecution on account of imputed political opinion. We also hold that the

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales.

-1-

agency's denial of Petitioner's CAT claim must be vacated because the agency appears to have misstated the record, and the agency's application of the law does not seem to comport with our most recent rulings. The petition for review is GRANTED and the case is REMANDED to the BIA, with instructions to remand to an Immigration Judge for further findings of fact.

_____

ALAN MICHAEL STRAUSS, (Stanley H. Wallenstein, *on the brief*), New York, N.Y., *for Petitioner*.

KEITH I. McMANUS, Office of Immigration Litigation, U.S. Department of Justice, (Nelson Pérez-Sosa, *on the brief*), *for* Rosa E. Rodriguez-Velez, United States Attorney for the District of Puerto Rico, San Juan, P.R., *for Respondent*.

_____

CALABRESI, *Circuit Judge*:

This case raises the question of whether an asylum seeker who was kidnapped in order to set up the computer network of a terrorist organization, and who, after her temporary release, has refused to cooperate further with that organization, has a reasonable fear of future persecution on the basis of imputed political opinion: opposition to the terrorist organization that kidnapped her. Since neither the Board of Immigration Appeals ("BIA") nor the Immigration Judge ("IJ") considered this asserted basis for relief, and since Petitioner did not have an opportunity to flesh out this argument at the hearing on the merits of her claim, we remand to the BIA with instructions to remand to an IJ for further findings of fact. We also remand for reconsideration of Petitioner's Convention Against Torture ("CAT") claim.

## I. BACKGROUND

Maria Del Pilar Delgado ("Petitioner" or "Delgado"), a native and citizen of Colombia, arrived in the United States in April 2002. In December 2002, she sought asylum, withholding of removal, and relief under the CAT. Her experiences in Colombia with the Revolutionary Armed

-2-

Forces of Colombia ("FARC"), an anti-government terrorist organization responsible for large numbers of civilian casualties, political murders, and forced disappearances, were the bases of her claims. Removal proceedings were initiated against Petitioner in June 2003, and a merits hearing took place on March 3, 2004, before IJ Brigitte Laforest.

Petitioner's attorney did not attend the hearing on the merits of Petitioner's claims. Two witnesses that Petitioner's attorney planned to call, Petitioner's mother and brother, also did not appear, apparently because Petitioner was unaware that her attorney wanted them there. The IJ proceeded without them, and on direct examination she solicited the following account from Petitioner.

In January 2002, three men and two women dressed in military clothing abducted Petitioner at gunpoint and transported her to a FARC camp in the countryside. They told her that she had been kidnapped because of her computer skills (at that time, Petitioner worked as a computer systems expert at a bank in Colombia), and that she would be setting up the FARC's computer network. According to Petitioner's asylum statement, the kidnappers threatened her by telling her that they knew who she was, where she lived, and where she worked; they said "[t]hey had been watching [her] and if [she] did not help them, [her] family would be preparing [her] funeral." Petitioner indicated she did not want to help the FARC because she "do[es] not support any organization that deals in murder."

After three days, the computer equipment had not arrived, so the FARC soldiers released Petitioner with instructions that they would contact her again and that she must not report them to the police; they reiterated that they could easily find her and that if she betrayed them she would be killed. Upon her release, Petitioner fled the town where the FARC soldiers left her and went

-3-

to a friend's house in another town. The following week, Petitioner learned that a man and a woman had asked Petitioner's roommate in her original town where Petitioner was. They indicated that the FARC's computer equipment had arrived. Someone had also called her mother's house looking for her. Petitioner filed an incident report with the local authorities, but "they did not give it much importance" because she was "just a civilian person."

Significantly, for the purpose of our analysis, the IJ found that Petitioner was credible and that her fears were subjectively genuine. Nevertheless, the IJ denied Petitoner's application for asylum and withholding of removal because Petitioner "was not kidnapped because of her political opinion, . . . her race, her religion, her nationality, or her membership in a particular social group." *See In re Delgado*, No. A 96 241 761 (Immig. Ct. New York City Mar. 3, 2004). "[F]or that reason and for that reason alone," the IJ stated, "I find that this respondent does not qualify for political asylum in the United States." *Id.* The IJ also found that Petitioner was not eligible for relief under the CAT because the FARC had not acted with the consent or acquiescence of the government.

Petitioner appealed to the BIA, arguing that she had established a well-founded fear of future persecution on account of her political resistance to the FARC and of her membership in a particular social group (experts in computer science). She also contended that the IJ violated her right to due process by failing to inform her that she could request a continuance when her attorney did not appear at her hearing. In addition and in any case, she requested a remand because her counsel had given her constitutionally ineffective assistance. The BIA adopted and affirmed the IJ's decision, adding that Petitioner's testimony showed that she had been kidnapped because of her computer skills, not her political opinion, and that the particular social

group she described was not cognizable because its members possess only "broadly-based characteristics." *See In re Delgado*, No. A 96 241 761 (B.I.A. July 18, 2005), *aff'g* No. A 96 241 761 (Immig. Ct. New York City Mar. 3, 2004) (internal quotation marks omitted). The BIA further found that even if the FARC targeted Petitioner on account of a protected ground, she would be ineligible for asylum since kidnapping does not rise to the level of persecution. The BIA denied Petitioner's CAT claim because the record was "devoid of any evidence" from which it could infer that she would suffer harm "with the acquiescence of the Colombian government." *Id.* The BIA did not consider Delgado's allegations regarding ineffective assistance of counsel or the IJ's failure to notify her about her right to a continuance. This appeal followed.

## II. DISCUSSION

### A. *Standard of Review*

Where, as here, the BIA has adopted and supplemented the IJ's decision, we review the decision of the IJ as supplemented by the BIA. *Gao v. Gonzales*, 440 F.3d 62, 64 (2d Cir. 2006). And because the IJ found Petitioner to be credible, we treat the events she experienced in the past as undisputed facts. *Id.* We review the factual findings of the IJ or the BIA under the substantial evidence standard, which means that "a finding will stand if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d. Cir. 2003) (internal quotation marks omitted). This standard "require[s] a certain minimum level of analysis from the IJ and BIA," as well as "some indication that the IJ considered material evidence supporting a petitioner's claim." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005). We review *de novo* questions of law and the application of law to undisputed fact. *Secaida-Rosales*, 331 F.3d at 307.

## B. *Asylum and Withholding of Removal*

Asylum is a discretionary form of relief that hinges on persecution in the applicant's country of nationality. An asylum applicant may establish eligibility by showing that she has suffered past persecution or has a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42). "An applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 208.13(b)(1). Once an applicant has established eligibility, however, it remains within the Attorney General's discretion to deny asylum.

Requests for withholding of removal under 8 U.S.C. § 1231(b)(3) often rely on the same grounds as asylum and depend on the same types of proof, but withholding of removal is a mandatory form of relief, and it requires the applicant to clear a higher bar. Specifically, if an applicant shows that "it is more likely than not" that her "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion," the Attorney General must withhold removal. 8 C.F.R. § 1208.16(b).

The applicant bears the burden of demonstrating eligibility for asylum and withholding of removal, but an applicant's testimony alone may be sufficient to carry this burden. 8 C.F.R. §§ 208.13(a), 208.16(b). We also recognize that "the IJ has an affirmative obligation to help establish and develop the record in the course of such proceedings," *Secaida-Rosales*, 331 F.3d at 306, especially when, as here, an alien is unrepresented by counsel, *United States v. Copeland*, 376 F.3d 61, 71 (2d Cir. 2004).

Petitioner argues that she has demonstrated a well-founded fear of future persecution on account of (1) the political opinion that the FARC has now imputed or will impute to her upon her return,[2] and (2) the government's unwillingness to control the FARC, exposing her to likely violent retaliation.[3]  We have "accept[ed] the proposition that an imputed political opinion, whether correctly or incorrectly attributed, can constitute a ground of political persecution." *Chun Gao v. Gonzales*, 424 F.3d 122, 129 (2d Cir. 2005) (internal quotation marks omitted).  The IJ did not consider this argument, however.

At the hearing on the merits of Delgado's claims, the IJ (who decided to proceed with the hearing without Delgado's attorney) asked no questions regarding Delgado's political opinion or the political opinion that her kidnappers might impute to her.  In rendering an oral decision, the IJ dealt with Delgado's fear of future persecution entirely in the abstract, and dismissed that fear with a single, conclusory sentence.  ("I . . . cannot find that [Delgado] has a well-founded fear of

[2] Petitioner further argues that she has demonstrated a well-founded fear of future persecution on account of membership in a particular social group: Colombian computer experts or "systems engineers."  In fact, Petitioner has not shown that the characteristics of her claimed social group satisfy the test that the BIA set forth in *Matter of Acosta*, 19 I. & N. Dec. 211, 233-34 (B.I.A. 1985).  Specifically, Petitioner has offered no argument as to why computer expertise is a characteristic "that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id.* at 233. Accordingly, we need not concern ourselves with whether the BIA correctly interpreted *Gomez v. INS*, 947 F.2d 660, 664 (2d Cir. 1991).  *See Hong Ying Gao v. Gonzales*, 440 F.3d 62, 69-70 (2d Cir. 2006) (acknowledging, in discussing *Gomez*, that "[t]he general law in our Circuit on particular social groups is less than clear," and declining to "decide the exact scope of *Gomez*").

[3] Because the IJ appears to have misunderstood Petitioner's imputed political opinion claim, he rejected her asylum claim on that ground alone and did not discuss her attempt to link the FARC's action to the government except in the context of her CAT claim.  Our own discussion of that latter point, *see infra* at [ ], applies equally to all Petitioner's claims for relief from removal.  *See, e.g.*, *Pavlova v. INS*, 441 F.3d 82, 91 (2d Cir. 2006); *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 342 (2d Cir. 2006).

persecution on account of one of the five enumerated grounds in the [INA].")  The BIA affirmed, reasoning (1) that because Petitioner testified that the FARC kidnapped her on account of her computer expertise, "the record does not support a conclusion that her abuse was premised upon a political opinion . . . imputed to her," and (2) that kidnapping does not rise to the level of persecution, so Petitioner could not have a well-founded fear of persecution.  The BIA's determination rests on two propositions, both legally untenable.

1. *Fear of Future Persecution on the Basis of Imputed Political Opinion*

The first proposition is that persecution on account of one ground precludes a well-grounded fear of future persecution on account of another.  Delgado did testify, as the BIA emphasized, that the FARC targeted her because of her knowledge of her computers, a reason unrelated to political opinion.  But she also testified that she would be targeted by the FARC in the future for betraying them, which, when coupled with the government's unwillingness to control the FARC, could well qualify as persecution for an imputed political opinion (opposition to the FARC).  The FARC soldiers who kidnapped Petitioner told her that they would kill her if she did not collaborate with them.  Petitioner clearly viewed her flight as a refusal to cooperate with the FARC, and it is reasonable to infer that the FARC would reach the same conclusion.  Petitioner also stated that she is opposed to the FARC ("I do not support any organization that deals in murder") and that she "belonged to a political party," a fact that she feared the FARC would discover.

Given this evidence, it did not necessarily follow that, because Petitioner's original kidnapping had not been politically motivated, her refusal to provide further technological assistance did not support a well-founded fear of future persecution on account of an imputed

political opinion. *Cf. Osorio v. INS*, 18 F.3d 1017, 1028 (2d Cir. 1994) ("[T]he conclusion that a cause of persecution is economic does not necessarily imply that there cannot exist other causes of the persecution."). Thus, the BIA erred in not discussing Petitioner's imputed political opinion claim. *Shu Ling Ni v. BIA*, 439 F.3d 177, 178, 180 (2d Cir. 2006) (per curiam).

### 2. *Kidnapping as "Persecution"*

The second basis for the BIA's determination is equally problematic. The BIA concluded that "the harm [Delgado] suffered simply does not rise to the level of persecution," noting, in a parenthetical summary of *Matter of V-T-S-*, 21 I. & N. Dec. 792, 798 (B.I.A. 1997), that "kidnaping generally does not qualify as persecution." "Accordingly," the BIA concluded, Delgado "has failed to demonstrate that she possesses a well-founded fear of future persecution in Colombia." This statement assumes, first, that the only type of persecution Petitioner fears is the type of harm she suffered before – kidnapping – and, second, that no kidnapping Petitioner might experience could constitute persecution. Both assumptions are flawed.

First, Petitioner credibly testified that she fears much more than kidnapping. She said she was "marked . . . for death" and that she would be killed for refusing to collaborate. State Department reports in the record confirm that the FARC did not hesitate to use murder to consolidate its power and enforce discipline, frequently killing both civilians suspected of cooperating with rival political groups and deserters from its own ranks.

Second, *V-T-S-* does *not* conclude that kidnapping generally does not qualify as persecution because the harm inflicted is not sufficiently severe. To the contrary, *V-T-S-* acknowledges that "[k]idnapping is a very serious offense." *Id.* at 798. What *V-T-S-* emphasizes is that "[s]eriousness of conduct" is not, by itself, "dispositive" of persecution; "the critical issue

is whether a reasonable inference may be drawn from the evidence . . . that the motivation for the conduct was to persecute the asylum applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* Thus, when confronted with a credible fear of kidnapping, the agency should proceed to consider whether the motivation for kidnapping is one indicative of persecution. *See generally Ucelo-Gomez v. Gonzales*, 464 F.3d 163, 167 (2d Cir. 2006) (per curiam) (faulting agency failure to consider petitioners' claim of threatened kidnapping). The agency failure to do so in this case, where Petitioner's fear of kidnapping was accompanied by an objectively reasonable fear of death, was error.

Because of these legal flaws in the agency's review of Petitioner's claim of future persecution, its ruling cannot stand. *See Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 149, 156-57 (2d Cir. 2003), *overruled on other grounds by Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007). This is not a case in which we can be confident that, absent these errors, the agency would reach the same result upon reconsideration, and thus we must remand. *Li Hua Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 107 (2d Cir. 2006). To the extent there is a need for further development of the factual record, a task outside the scope of the BIA's authority, *see* 8 C.F.R. § 1003.1(d)(3)(i), (iv), we instruct that on remand, the BIA send this case to an IJ for further findings of fact.

* * * * *

The IJ and the BIA conducted no particularized analysis as to whether Delgado met the standard for withholding of removal under the INA. Rather, the agency reasoned that an applicant who cannot meet the standard for asylum cannot meet the higher standard for withholding of removal. Because we are remanding this case for further consideration of

Delgado's asylum claim, Delgado's withholding of removal claim must be reconsidered as well. *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 407 (2d Cir. 2005).

## C. *CAT Relief*

In addition to applying for asylum and withholding of removal under the INA, Petitioner applied for withholding of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85. The Attorney General must withhold removal under the CAT if an applicant shows that it is "more likely than not" that a petitioner would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). CAT relief does not require a nexus to a protected ground.

"Torture" under the CAT is "an extreme form of cruel and inhuman treatment," which is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" for purposes such as interrogation, punishment, intimidation, coercion, or discrimination, "when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a). A public official has "acquiesced" when, "prior to the activity constituting torture," the public official "ha[s] awareness of such activity and thereafter breach[es] his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). "Acquiescence" does not require official "consent or approval"; it "requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it." *Khouzam v. Ashcroft*, 361 F.3d 161, 170-71 (2d Cir. 2004).

Delgado argues that she is entitled to withholding of removal under the CAT because, if removed to Colombia, she is likely to be tortured by the FARC; she claims, moreover, that "she can expect no protection from her government." The IJ denied this claim, finding that Petitioner had failed to meet the standard for CAT relief because "the actions that took place in Colombia against [Petitioner] were not done by government officials or anyone acting with the consent or acquiescence of government officials."[4] The BIA affirmed, stating only that "the record is devoid of any evidence from which we could infer that any harm the [Petitioner] might suffer upon return would be with the acquiescence of the Colombian government." While we offer no opinion as to whether Petitioner's CAT argument should succeed, we remand the issue for reconsideration because the BIA appears to have misstated the record, and the agency's application of the law with respect to government acquiescence in third-party actions does not seem to comport with our most recent rulings on that point.[5]

Contrary to the BIA's characterization of the record, Petitioner testified that several days after her kidnapping she filed a complaint with the local authorities, but they did not give her complaint "much importance" because she was "just a civilian person." In addition, and significantly, a 2002 report by Human Rights Watch in the record indicates that, "[w]ith the stated goal of furthering peace talks," the government had allowed the FARC "to maintain

---

[4] Again, the IJ has inexplicably assumed that the type of harm Petitioner fears she will encounter on her return is the same type of harm that she encountered before: kidnapping, with no physical abuse. In fact, Petitioner testified that she feared she would not only be kidnapped again, but killed.

[5] The requirement of government involvement or acquiescence applies equally to a petitioner's claims of asylum and withholding of removal. *See, e.g.,* *Pavlova*, 441 F.3d at 91; *Ivanishvili*, 433 F.3d at 342.

control over a Switzerland-sized area" of the country. Whatever weight this testimonial and documentary evidence warranted, its existence precluded the BIA from concluding that "the record is devoid of any evidence" to support a claim of government acquiescence in the FARC's retaliatory violence. *See generally Khouzam v. Ashcroft*, 361 F.3d at 171 (holding that acquiescence may be shown by evidence that officials knew of private parties' abusive actions "and thereafter breach[ed] their legal responsibility to prevent [such actions]"). Where the IJ and BIA "ha[ve] given reasoned consideration to [a] petition, and made adequate findings," they are not required "expressly to parse or refute on the record each individual argument or piece of evidence offered by the petitioner." *Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) (internal quotation marks omitted). But failure to consider material evidence in the record is ground for remand. *Tian-Yong Chen v. INS*, 359 F.3d 121, 128 (2d Cir. 2004). Such a failure occurred here. And the fact that "a hypothetical adjudicator, applying the law correctly, might also have denied" a CAT claim is "no[] excuse[]" for a failure to consider the evidence. *Jin Shui Qiu*, 329 F.3d at 149; *see generally Poradisova*, 420 F.3d at 77 ("We . . . require some indication that the IJ considered material evidence supporting a petitioner's claim.").

In the interest of judicial economy, we also note that the agency's failure to mention the material evidence in support of Petitioner's CAT claim may well indicate the application of an inappropriately stringent standard on the part of the agency. It appears that the BIA and IJ required Petitioner to show the government's affirmative consent to torture. This would constitute legal error and would by itself be grounds for remand – for a showing of willful blindness suffices to support a CAT claim. *See Rafiq v. Gonzales*, 468 F.3d 165, 166 (2d Cir.

2006) (per curiam) (remanding a CAT claim to the BIA because the IJ "failed to acknowledge [*Khouzam*] as controlling authority" and did not appear to apply the correct legal standard).

### D. *Claims Relating to Petitioner's Lack of Counsel at Her Removal Hearing*

Delgado has argued on appeal that the IJ erred by not informing her of her right to seek a continuance when her counsel failed to appear at her merits hearing. Delgado characterizes the IJ's inaction as an abuse of discretion and a violation of due process. She also claims that the BIA should have remanded her case to the IJ on the basis of ineffective assistance of counsel. Since we now remand all of Petitioner's claims to the BIA, with orders to remand the proceedings to the IJ for further factfinding, these alleged errors have been rendered harmless.

## III.  CONCLUSION

Having considered all of the arguments that Petitioner has raised, we **GRANT** the petition for review and **REMAND** the proceedings to the BIA. We instruct the BIA to remand to an IJ for further findings of fact.