OPINION
PER CURIAM.
Petitioners Carlos Zapata-Marulanda and Gloria Galeano de Zapata (“petitioners”), husband and wife, are natives and citizens of Colombia. They seek review of a final order of removal. Because we conclude that substantial evidence supports the BIA’s determination that petitioners do not have a well-founded fear of future persecution and, as a result, that they are not entitled to asylum, we will deny their petition for review.
I.
Petitioners last entered the United States on April 26, 2003. In November 2003, they were served with a Notice to Appear, charging them as overstays in violation of 8 U.S.C. § 1227(a)(1)(B). Petitioners conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”).[1] In the alternative, petitioners requested voluntary departure. In support of their requests, Zapata-Maru-landa, as lead petitioner, argued that he had been persecuted by guerrillas from the Revolutionary Armed Forces of Colombia (“FARC”)[2] on account of an imputed political opinion.
According to Zapata-Marulanda, this persecution began in 1997 after he — in his position as a supervisor in a textile factory — reported a loss of inventory in the fabric used to make uniforms for the armed forces of Colombia. The army intelligence unit (rather than the police) conducted an investigation and discovered that several workers were stealing the material and selling it to the guerrillas; this allowed the guerrillas to sew and tailor authentic-looking uniforms. The workers were eventually fired and arrested. Some *275 how the guerrillas discovered Zapata-Ma-rulanda’s involvement in the investigation and targeted him as a “military objective” for his actions. Zapata-Marulanda received threatening phone calls, during which the stolen fabric was referenced, and three unknown men appeared at Zapata-Marulanda’s workplace looking for him.
Because of his fear of retribution from the guerillas, Zapata-Marulanda was forced to quit his job of 26 years, and he and his wife moved from place to place (including three trips to the United States). Zapata-Marulanda alleged that despite these moves, FARC caught up with him in July of 2001 while he was in Barranquilla. At that time, three men— who were allegedly guerrillas looking for Zapata-Marulanda — were in a shootout with police across the street from where petitioner was hiding out. All three were fatally wounded. For the next year or so, petitioners moved around to ensure their own safety and eventually relocated to the United States for good in 2003.
After a hearing during which Zapata-Marulanda testified to these events, the Immigration Judge (“IJ”) denied petitioners all relief with the exception of voluntary departure. The IJ characterized petitioners’ case as one amounting to “a request for protection under or similar to our whistle blower laws.” (IJ Op. at 6.) The IJ further commented that the “main issue in these cases is whether the connection between the alleged persecutor and the [petitioners] has been established. Id. at 7. The IJ concluded that Zapata-Marulanda’s testimony was not supportive of such a “link.”[3] Without discussing petitioners’ prayer for relief in the form of withholding of removal or under the CAT, the IJ denied petitioners’ requests for relief and ordered them removed after a 60-day period of voluntary departure.
The BIA dismissed petitioners’ appeal. Citing to Matter of Fuentes, 19 I. & N. Dec. 658, 661 (BIA 1988), the BIA concluded that Zapata-Marulanda did not suffer past persecution on account of a protected ground. It further concluded that, in any event, the acts described by Zapata-Maru-landa did not detail mistreatment of sufficient severity to constitute past persecution. The BIA likewise determined that Zapata-Marulanda does not have a well-founded fear of future persecution, reasoning that he has never been physically harmed in Colombia, and any alleged fear is belied by petitioners’ repeated travels back and forth between the United States and Colombia after the July 2001 shootout, before finally coming to the United States and seeking asylum in 2003. Finally, the BIA concluded that petitioners necessarily failed to satisfy the standard for withholding of removal, or to establish that it is more likely than not that Zapata-Marulan-da would be tortured by the government of Colombia upon returning to that country. Petitioners filed this petition for review.
II.
We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Abdulai v. Ashcroft, 239 *276 F.3d 542, 547 (3d Cir.2001). Because the BIA provided its own analysis, we review the decision of the BIA. See Lukwago v. Ashcroft, 329 F.3d 157, 166 (3d Cir.2003). We review the BIA’s factual findings for substantial evidence, see Briseno-Flores v. Att’y Gen., 492 F.3d 226, 228 (3d Cir.2007), upholding them “unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B); see also Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir.2003) (en banc). We will treat Zapata-Marulanda’s testimony, summarized above, as credible. See Camara v. Att’y Gen., 580 F.3d 196, 201 (3d Cir.2009) (“Under the Act, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal”) (emphasis added, quotation omitted).
III.
The only issue presented is whether the BIA’s determination that petitioners are not entitled to asylum is supported by substantial evidence.[4] We conclude that it is.
To obtain asylum as refugees, petitioners must show that they are unable or unwilling to return to Colombia because of past persecution or a well-founded fear of future persecution. See 8 U.S.C. § 1101(a)(42). “[Pjersecution connotes extreme behavior, including ‘threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.’ ” Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir.2003) (quotation omitted). A demonstration of a well-founded fear of persecution, by itself, would entitle petitioners to asylum relief. See Camara, 580 F.3d at 202. A demonstration of past persecution, on the other hand, “raises a presumption of a well-founded fear of future persecution” that shifts the burden to the Government. Ab-dulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir.2003).
The alleged persecution must be “on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control.’ ” Valdiviezo-Galdamez v. Att’y Gen., 502 F.3d 285, 288 (3d Cir.2007) (quotation omitted); see also Singh v. Gonzales, 406 F.3d 191, 197 (3d Cir.2005) (“[A]n applicant must show that the persecution was motivated, at least in part, by one of the protected characteristics”) (emphasis in original). Race, religion and political opinion are all statutorily enumerated grounds. See 8 U.S.C. § 1101(a)(42)(A).
As already noted, the BIA relied on its decision in Matter of Fuentes to support its conclusion that petitioners had “not suffer[ed] past persecution in Colombia on account of a protected ground under the Act.” (BIA Op. at 2.) It reasoned that revolutionary struggles involving guerrillas often involve violence against “civilian institutions that support domestic stability and the strength of the existing government,” and that the dangers those institutions face “are no more related to their personal characteristics or political beliefs than are the dangers faced by military combatants.” Id. The BIA’s reliance on Matter of Fuentes is misplaced as it does not appear that Zapata-Marulanda was targeted by FARC because the textile plant where he worked made uniforms for *277 the military. It does not appear, however, that Zapata-Marulanda was targeted by FARC because the textile plant where he worked made uniforms for the military. Rather, he, and he alone, was targeted because the information he provided sabotaged FARC’s illicit supply of military-issued materials that was being stolen by its operatives working within that company.
But even assuming both that Zapata-Marulanda was targeted by FARC because of an imputed political opinion, see, e.g., Delgado v. Mukasey, 508 F.3d 702, 707 (2d Cir.2007) (petitioner who would be targeted by FARC in the future for betraying them, when coupled with government’s unwillingness to control FARC, could show persecution for an imputed political opinion in the form of opposition to FARC), and that the July 2001 shootout is sufficient to constitute past persecution, see, e.g., Sanchez Jimenez v. Att’y Gen., 492 F.3d 1223, 1233 (11th Cir.2007) (attempted murder of petitioner by FARC constitutes past persecution), the record reveals substantial evidence to rebut any presumption that petitioners’ fear of future persecution is well-founded. See Camara, 580 F.3d at 202 (“a well-founded fear of future persecution is the touchstone of asylum”). As advanced by the Government, and as specifically outlined by the BIA,
[Zapata-Marulanda]’s claim to a well-founded fear of future persecution is undercut by the fact that he traveled to the United States on three previous occasions, and returned to Colombia each time. All three trips to the United States occurred during the time frame that [Zapata-Marulanda] alleges the persecution was taking place in Colombia. Finally, [Zapata-Marulanda] remained in Colombia for nearly two years after the July 2001 shoot out [sic] between the police and FARC before finally coming to the United States and filing for asylum.
(BIA Op. at 2.) For those reasons, we agree with the BIA that petitioners do not have a well-founded fear of future persecution.[5]
Accordingly, we will deny the petition for review.

. Zapata-Marulanda is the lead petitioner, and Galeano de Zapata sought derivative asylum pursuant to 8 U.S.C. § 1158(b)(3)(A).

. FARC is "a leftist guerrilla revolutionary group, ... active throughout much of Colombia. The FARC was officially formed in 1966 and has continuously and often violently opposed the Colombian government since that time. The FARC is designated as a terrorist organization by the United States Government. While the FARC is active throughout Colombia, it holds particular sway in many rural areas where it effectively controls local politics and the civilian population.” Gomez-Zuluaga v. Att’y Gen., 527 F.3d 330, 335 (3d Cir.2008).

. While the IJ noted that a newspaper article that Zapata-Marulanda submitted in support of the July 2001 shootout was never rebutted by DHS, he nonetheless stated that the article (also characterized as "the best evidence in the case”) had internal problems. Although the article reported that the shootout occurred on July 28, Zapata-Marulanda stated that it happened on July 29. Moreover, the IJ noted that the article mentioned Zapata-Marulanda by name and intimated that he had been targeted for assassination, but he nonetheless criticized the article for failing to indicate the reason for the attempted assassination and the force behind that attempt. Despite these observations, the IJ did not make an adverse credibility determination.

. By failing to challenge the BIA's determination that they are ineligible for withholding of removal and CAT relief in their opening brief, petitioners have waived those issues. See Ghana v. Holland, 226 F.3d 175, 180 (3d Cir.2000) (“Rule 28(a) of the Federal Rules of Appellate Procedure and our Local Appellate Rule 28.1(a) require appellants to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief'); see also Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir.2004).

. Moreover, petitioners' children have resided in Colombia since the time of the alleged persecution without any harm. See Abdulrah-man, 330 F.3d at 592 n. 3 (presumption of well-founded fear of persecution can be rebutted with evidence that petitioner can reasonably avoid persecution by relocating to another part of his or her country); cf. Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir.2005) ("[Wjhen family members remain in petitioner’s native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished”).