HAMILTON, Circuit Judge,
concurring.
I concur fully in the court’s opinion, which shows that we must grant the petition for review because petitioner Martinez-Buendia was persecuted by the FARC on the basis of her political opinions. I write separately to note that I believe the Board of Immigration Appeals also applied too narrow a concept of a “social group” when evaluating petitioner’s leadership in the brigadas de salud (Health Brigades) in Colombia. If we were not ordering the Board to grant refugee status to petitioner based on political *720 persecution, I would order a remand to the Board for further development and consideration of the social group issue.
To gain asylum in the United States, it is not enough for a refugee to show only that she was persecuted or at grave risk in her home country. She must also show that she suffered or faces persecution for a statutory reason: “on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1101(a)(42) (definition incorporated in 8 U.S.C. § 1158(b)(1)(A)).
In this case, the Board characterized petitioner’s social group argument as one based on “membership in a group consisting of educators and healthcare professionals ‘who are able to go places ... the FARC ... cannot ... and win the hearts and minds of the citizens.’ ” According to the Board, the immigration judge properly rejected that argument because petitioner had not shown a “common quality binding the group members that is either unchangeable or fundamental to their identities such that a cognizable group exists.” Nor, said the Board, had she shown “that the FARC was targeting her to punish her for or to overcome her group membership.”
In my view, the Board’s rejection of this argument was based on two closely related errors. First, it did not recognize that the statutory definition can reach a social group defined by its activities, at least where the persecution is based on those activities. Second, the Board failed to consider the extent to which this petitioner was acting as a matter of conscience when she acted so as to draw the attention and wrath of the FARC.
Social Group Defined by Activity that Draws Persecution: If the FARC’s only reason for targeting petitioner MartinezBuendia was that she refused to act as a means to the FARC’s ends, she would be like many other Colombian citizens who are ineligible for asylum in the United States. They are targeted not as a coherent group with a set of deeply held beliefs, but rather as one of an undifferentiated mass of people who suffer terribly because of the FARC’s brutal methods. See, e.g., Delgado v. Mukasey, 508 F.3d 702, 706 n. 2 (2d Cir.2007) (rejecting petitioner’s claim that Colombian computer experts constitute a social group because she was kidnapped to help the FARC set up a computer network); accord, Ahmed v. Ashcroft, 348 F.3d 611, 619 (7th Cir.2003) (no “social group” claim from “danger ... affecting the population in a relatively undifferentiated way”). Without more, nothing would distinguish petitioner from anyone else the FARC sought to coopt for its mission, and she would be ineligible for asylum in the United States.
The Board erred as a matter of fact and law, however, when it characterized petitioner’s proposed social group as one defined merely by the fact that the FARC targets members to get access to people and resources. The evidence in this record goes much further toward distinguishing members of the Health Brigades from the tragic and undifferentiated mass of other FARC victims. Petitioner was not targeted solely because she was in a position to help the FARC reach the rural poor. She relied on a 2002 report published by the Immigration and Naturalization Service itself to show that the Health Brigades can qualify as a social group under United States immigration law. The report explains that the FARC is engaged in a systematic campaign targeting humanitarian groups generally — and the Health Brigades specifically — because they are often aligned with political groups opposed to the FARC. The FARC sees these humanitarian groups as its competitors for control over the towns and regions where both they and the FARC operate. These assertions, like all the evidence petitioner *721 presented, were credited by the immigration judge and deserved greater consideration by the Board.
With respect to this evidence, the Board erred as a matter of law in requiring petitioner to show a “common quality binding the group members together that is either unchangeable or fundamental to their identities.” The decision of this court cited by the Board, Najafi v. INS, 104 F.3d 943 (7th Cir.1997), did not actually adopt such a demanding standard. That case is consistent with the Board’s own broader standard: a group of people who are “unable by their own actions, or as a matter of conscience should not be required, to avoid persecution.” In re Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985); accord, Lwin v. INS, 144 F.3d 505, 512 (7th Cir.1998) (adopting standard from Acosta).
In applying that standard, we have gone so far as to hold that a social group may be defined merely by the fact that its members share a certain characteristic and are systematically persecuted solely because they share that characteristic. In Tapiero de Orejuela v. Gonzales, 423 F.3d 666, 672 (7th Cir.2005), we found that the petitioners were members of a persecuted social group because the FARC had persecuted them based on their membership in “a distinct social group: the educated, landowning class of cattle farmers targeted by FARC.” There was no evidence in Tapiero de Orejuela that Colombian cattle farmers feel their cattle-farmer identity so strongly that it could be considered fundamental, or that one becomes a cattle farmer out of a moral or near-religious belief that it is the right thing to do. There was some limited evidence that the petitioners’ identity in that group had become immutable. Most important, however, there was evidence that the FARC systematically persecuted educated cattle farmers as a group, and that it persecuted these specific educated cattle farmers simply because they belonged to that group. That was enough to find a protected “social group.”
Defining a social group based solely on its persecution as a social group would not be inconsistent with the Board’s decision in Acosta, which reasoned that “social group” should be defined no more broadly than the narrower categories of eligibility like race and nationality. When a person is persecuted because of her race or nationality, we do not ask her to prove how deeply she feels her racial or national identity. Nor must she prove that she feels a kinship with people who share that identity. True, those characteristics are immutable, and many people may in fact feel a strong racial or national identity in part because that identity cannot be changed. But that is not why we provide asylum to people persecuted because of their race or nationality. We provide asylum because those people are being persecuted simply for who they are. I can think of no good reason why the statute would treat differently a member of a social group who is persecuted for who she is, at least as long as the petitioner, as in Tapiero de Orejuela, can show that the group is coherently defined and that she was indeed persecuted simply because she is a member of the group.
Social Group Membership Based on Conscience: Because of the Board’s second error in this case, however, petitioner’s social-group theory does not require the Board or the court to go so far as we did in Tapiero de Orejuela. The Board’s second error was to downplay both the Acosta standard’s extension to persecuted social groups defined by conscience and the facts showing that petitioner was persecuted for acting according to her conscience. Petitioner offered uncontested evidence that she was an active leader in a group of people who provided health care to the poor, and that she, at least, engaged *722 in that activity as a matter of conscience. For the same reasons of conscience, she refused to leave the group in response to the FARC’s threats and kidnaping. The immigration judge credited her testimony. On this record, we can and should acknowledge her dedication, and her courage.
If petitioner and other Health Brigade members were persecuted because they were providing health care to the poor as a matter of religious faith and practice, there would be little doubt that they could qualify for asylum. If petitioner and other Health Brigade members were providing health care as an exercise of their secular ethical values that also can fairly be described as matters of conscience, the question should be no more difficult under the Acosta standard.
In sum, the facts and law relevant to petitioner’s claim for refugee status as a member of a persecuted social group deserved closer consideration. Future petitioners may offer evidence that they joined groups like the Health Brigades as a matter of conscience and that they have been persecuted, or that they face future persecution, on account of their membership in and work on behalf of the Health Brigades. They should not be denied asylum simply because that membership may appear more fluid than membership in a racial, ethnic, or religious group, or because their involvement is the result of secular ethical values instead of religious faith.