*Morales-Espania v. Lynch*

BIA
Montante, IJ
A088 935 213

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of June, two thousand sixteen.

PRESENT:
        PETER W. HALL,
        GERARD E. LYNCH,
        DENNY CHIN,
            *Circuit Judges.*

_____

MARLO IVON MORALES-ESPANIA,
        *Petitioner,*

        v.                             14-1838

LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,
        *Respondent.*

_____

FOR PETITIONER:        Jose E. Perez, Law Offices of Jose Perez, P.C., Syracuse, New York.

FOR RESPONDENT:        Benjamin C. Mizer, Acting Assistant Attorney General; Jesse M. Bless, Senior Litigation Counsel; Lauren E. Fascett, Trial Attorney, Office of

Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED in part and DISMISSED in part.

Petitioner Marlo Ivon Morales-Espania, a native and citizen of Guatemala, seeks review of a June 13, 2014, decision of the BIA affirming a December 6, 2012, decision of an Immigration Judge ("IJ") denying Morales-Espania's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Marlo Ivon Morales-Espania,* No. A088 935 213 (B.I.A. June 13, 2014), *aff'g* No. A088 935 213 (Immig. Ct. Buffalo Dec. 6, 2012). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision, including the portions not explicitly discussed by the BIA. *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). The applicable standards of review are well

2

established.  *See* 8 U.S.C. § 1252(b)(4)(B); *see also Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

## Asylum and CAT Relief

Under 8 U.S.C. § 1252(d)(1), where a petitioner has failed to raise a category of relief in his brief to the BIA, we are without jurisdiction to consider any challenge to the denial of that relief.  *Karaj v. Gonzales*, 462 F.3d 113, 119 (2d Cir. 2006).  Because Morales-Espania did not challenge the IJ's denial of either asylum or CAT relief before the BIA, we lack jurisdiction to review the denial of those forms of relief.

## Withholding of Removal

### Adverse Credibility Determination

For applications such as Morales-Espania's, governed by the REAL ID Act of 2005, the agency may, considering the totality of the circumstances, base a credibility finding on an applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his statements, so long as they reasonably support an inference that the applicant is not credible.  8 U.S.C. §§ 1158(b)(1)(B)(iii), 1231(b)(3)(C); *see also Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008).  We defer "to an IJ's

3

credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. The substantial evidence standard "requires a certain minimum level of analysis from the IJ and BIA." *Delgado v. Mukasey*, 508 F.3d 702, 705 (2d Cir. 2007) (internal quotation omitted). In this case, the totality of the circumstances does not reasonably support an inference that Morales-Espania was not credible; accordingly, substantial evidence does not support the adverse credibility determination.

Morales-Espania claimed that he had been persecuted, and that he feared future persecution, by gang members on account of his membership in a civic association of businessmen in his town. Morales-Espania testified that the group, the Association of Cattlemen and Farmers of Chanmagua ("ASAGACH" in its Spanish abbreviation), worked with students to prevent them from using drugs and getting involved with gangs and that Guatemalan gangs targeted group members because the group interfered with gang recruitment. The IJ found that Morales-Espania was not credible because his "statements regarding the threats made against his life were vague and

conclusory," he "had difficulty remembering key details in his testimony, such as the years in which his father and uncle were killed," and he "admitted that he previously lied to immigration officials to obtain an advantageous outcome." A.R. 68. The IJ, however, failed to provide any examples of Morales-Espania's vague and conclusory testimony. *See Delgado*, 508 F.3d at 705-06. A review of the record shows that Morales-Espania's testimony regarding the threats he received was detailed.

With regard to the death of Morales-Espania's uncle, Morales-Espania testified during direct examination that he could not remember the year his uncle died, and during cross-examination, which took place a year and a half after direct examination, he testified that his uncle died in 2001. During direct examination, Morales-Espania testified that his father was assassinated in 1995; he was then confronted with his father's death certificate, which showed that his father died in 1994. Morales-Espania testified that he misspoke because he had not remembered the exact year his father died. The only contradiction in Morales-Espania's testimony is that

5

he stated that his father died in 1995, before correcting himself.

Finally, the IJ found Morales-Espania not credible in part because he "admitted that he previously lied to immigration officials to obtain an advantageous outcome." A.R. 68. Morales-Espania testified that when he first entered the United States in 2002, he was immediately apprehended by U.S. border officials. He told the officials that he was Mexican, as he was instructed to do by the individuals who smuggled him into the United States, so that he would be returned to Mexico and have an easier time crossing the border again. He testified that had he thought he was going to be returned to Guatemala, he would have told the border officials that he was scared to return. While an IJ generally may rely on the doctrine *falsus in uno, falsus in omnibus* – as the IJ did here to find that Morales-Espania's false statement to border officials infected the entirety of his claim – there are exceptions to that doctrine. *Siewe v. Gonzales*, 480 F.3d 160, 170-71 (2d Cir. 2007). Exceptions exist where false evidence was provided in a situation relating to escape from persecution or where an alien talking to U.S. officials may not be entirely forthcoming

6

because of a fear of government authorities in general. *Id*. Notwithstanding these exceptions, the IJ found Morales-Espania's statement to U.S. border officials to be the "most significant[]" basis for the adverse credibility determination. A.R. 68.

Moreover, "[f]alse evidence that is wholly ancillary to the alien's claim may, in some circumstances, be insufficient by itself to warrant a conclusion that the entirety of the alien's uncorroborated material evidence is also false." *Siewe*, 480 F.3d at 170. Morales-Espania's false statement to border officials is ancillary to his claim that he fears harm from gang members in Guatemala. This single false statement, together with one other very minor inconsistency, is insufficient to sustain an adverse credibility determination. *See Xiu Xia Lin*, 534 F.3d at 167.

The BIA affirmed the IJ's adverse credibility determination without discussing any of the specific reasons the IJ cited in support of its conclusion that Morales-Espania was not credible. Instead, the BIA impermissibly engaged in fact-finding and relied on inconsistencies that the IJ did not mention or consider. *See Weinong Lin v. Holder*, 763 F.3d 244,

247 (2d Cir. 2014) (observing that "the BIA has no power to find facts"); 8 C.F.R. § 1003.1(d)(3)(i), (iv). The BIA found that certain details of Morales-Espania's testimony regarding threats from gangs and car accidents allegedly caused by cut brake lines were inconsistent with testimony from his sister and brother-in-law. The IJ made no such finding. Accordingly, the BIA erred in engaging in independent fact-finding and, considering the totality of the circumstances, the credibility finding is unsupported by substantial evidence.

Particular Social Group

The agency concluded in the alternative that even if Morales-Espania was credible, he did not establish that he was a member of a particular social group within the meaning of the immigration statute. The agency omitted considering certain evidence in reaching its conclusion. Morales-Espania stated that Guatemalan gang members threatened and attempted to harm him because of his membership in ASAGACH, an incorporated organization with bylaws and board members. While the IJ acknowledged Morales-Espania's defined group, he did not analyze whether this group was a particular social group within

8

the meaning of the Act. Instead, he determined that Morales-Espania's membership was "incidental to his family's status as relatively well-off merchants" and concluded generally that neither "affluent Guatemalans" nor "shared opposition to gang violence" constitute a particular social group. A.R. 69.

Similarly, the BIA concluded that Morales-Espania did not "sufficiently demonstrate that the business people associated with farmers and ranchers, who also provide support for the poor, are perceived, considered, or recognized by Guatemalan society to be a distinct social group." A.R. 5. The BIA did not specifically address the significance of Morales-Espania's particular organization nor did it discuss whether members of that particular organization are perceived as socially distinct within the town in which it operates. *See Matter of W-G-R-*, 26 I&N Dec. 208, 217-18 (B.I.A. 2014); *see also Paloka v. Holder*, 762 F.3d 191, 195-97 (2d Cir. 2014).

The agency additionally concluded that Morales-Espania had not shown a nexus between any harm he suffered and his group membership. This finding is also infected by the agency's failure to consider Morales-Espania's actual group: to

determine whether an applicant was harmed on account of his membership in a particular social group, the agency must first correctly identify the group to which the applicant belongs. *Matter of W-G-R-*, 26 I&N Dec. at 223-24. This finding is further infected by the agency's failure to consider Morales-Espania's testimony. Although the agency's nexus finding is cast as an alternative to the adverse credibility determination, the agency failed to credit, or even mention, Morales-Espania's testimony that members of ASAGACH were sometimes threatened by gangs, that gangs wanted the organization to cease to exist, that his father and uncle were killed for belonging to the organization, and that he was personally threatened with death if he did not leave the organization.

For the foregoing reasons, the petition for review is GRANTED with regard to withholding of removal and the case is remanded to the agency. The petition is DISMISSED with regard to Morales-Espania's claims for asylum and CAT relief.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk

10